No. 70,850

RONALD G. GALINDO, *Appellant*, v. CITY OF COFFEYVILLE, *Appellee.*

(885 P.2d 1246)

*Randall J. Forbes*, of Frieden, Haynes & Forbes, of Topeka, argued the cause and was on the brief for appellant.

*Nancy L. Moore*, city attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: A fireman sued a city for breach of contract and for taking his property right without due process of law in violation of 42 U.S.C. § 1983 (1988) by failing to pay the appropriate retirement pension. The trial court found that the fireman's pension payment was at least equal to that required by K.S.A. 13-14a08, and that the fireman failed to prove his § 1983 claim. The fireman appealed.

The basic facts of this case are not in dispute. Ronald G. Galindo was employed by the City of Coffeyville (the City) as a firefighter for a period of over 24 years prior to his retirement on September 7, 1992. Galindo was a "24-hour employee." This meant Galindo would regularly work for a 24-hour period and then be off for the next 48 hours. Galindo was originally paid a flat monthly salary regardless of the number of hours he actually worked. When it was determined that municipalities were obligated to pay firefighters for overtime, Galindo began receiving his compensation based on an hourly rate. Bargaining between the City and the firefighters' labor union provided Galindo with other benefits, such as a cash payment at retirement for up to 45 shifts of unused sick leave. Three percent of each additional benefit was deducted by the City for the retirement plan. When he retired at age 50, Galindo was being paid a base hourly wage of $10.18 per hour and was scheduled to work 2,920 hours per year.

In 1945, the Kansas legislature enacted K.S.A. 13-14a01 *et seq.*, which required Kansas cities of the first class to establish pension funds for police and fire departments. Cities were required to pay the retired member monthly payments in an amount equal to 50%

of the member's monthly salary at the date of his or her retirement. The City established a pension fund, referred to as the "Local Plan."

In 1961, the Kansas Legislature enacted K.S.A. 74-4901 *et seq.,* creating the Kansas Public Employees Retirement System (KPERS). Originally, KPERS covered only those municipal employees not covered or eligible for another retirement plan authorized under Kansas law. In 1965, the Kansas Legislature enacted K.S.A. 74-4951 *et seq.,* creating the Kansas Police and Firemen's Retirement System (KP&F) as a division of KPERS.

In 1967, the KP&F legislation was amended to allow any city employing police officers or firefighters and individual participants in existing city plans to join KP&F. L. 1967, ch. 431, § 3. In 1976, the legislature significantly altered the operation of local police and firefighters pension plans. The 1976 legislation extended an invitation to members of local police and firefighters pension plans to become regular members of KP&F by filing a written statement of election. L. 1976, ch. 348, § 3. Regular members' contributions to KP&F were seven percent. Anyone who did not elect to join as a regular member became a "special member." Special members' contributions to KP&F were increased from three percent to seven percent, but each special member was only entitled to the pensions and other benefits, rights, and privileges to the extent provided under their local plan. L. 1976, ch. 348, § 5.

In 1977, the City became a member of KP&F for newly employed police officers and firefighters and transferred administration of its Local Plan to KPERS. Subsequently, the City's responsibility for the Local Plan was to withhold the amount of the employee contributions determined by KPERS from the members' salary and submit employer and employee pension contributions to KPERS. Individuals who remained in the Local Plan became special members of KP&F, but the members' retirement benefits were set by the provisions of K.S.A. 13-14a01 *et seq.*

For a three-year period, Galindo elected to become a regular member of KP&F and had seven percent withheld from his compensation. The 1976 legislation which had increased contributions

from KP&F special members was challenged in *Singer v. City of Topeka*, 227 Kan. 356, 607 P.2d 467 (1980). In that case, this court recognized that the State or a municipality may make reasonable changes or modifications in pension plans in which employees hold a vested interest, but changes which result in disadvantages to employees must be accompanied by offsetting or counterbalancing advantages. The *Singer* court held that the K.S.A. 13-14a02 increase of special members' contributions without an offsetting or counterbalancing advantage was an unconstitutional impairment of the plaintiffs' contract rights. The *Singer* court ordered that amounts withheld in excess of three percent of the special members' compensation be refunded. 227 Kan. at 369.

Shortly after the decision in *Singer*, the United States District Court for the District of Kansas, following *Singer*, ordered that those employees who had elected to become regular members of KP&F should be given the opportunity to revoke their election, return to special member status, and receive a refund of their excess contributions. *Odle v. Kansas Police and Firemen's Retirement System*, No. 80-4080 (D. Kan. December 15, 1980). Galindo elected to return to the Local Plan as a KP&F special member. His payroll contributions were reduced from seven percent to three percent, and he was refunded the amount over three percent which had been withheld. Throughout the balance of Galindo's employment, the City withheld three percent of Galindo's compensation, which at the time of his retirement included overtime, accumulated holiday and sick leave, compensatory time, and vacation pay, as a contribution toward his retirement pension. Galindo remained a member of the Local Plan until he retired.

During the years Galindo was employed by the City, the City and the International Association of Firefighters Local #265 (Local #265) entered into employment contracts. Part VI of the employment contract for January 1, 1991, to December 31, 1992, entitled MEDICAL INSURANCE, PENSION AND LIFE INSURANCE PROGRAMS, states:

"The City shall continue in full force and effect without variance the current policies of the State of Kansas KPERS and KP&F pension plans and life in-

surance plan, unless amended by mutual agreement between City and employee organizations."

Although K.S.A. 13-14a08 required the City to pay the retired member monthly payments in an amount equal to 50% of his monthly salary at the date of his or her retirement, no mutual agreement was entered into by the City and Local #265 defining what was the "monthly salary at the date of retirement."

In 1991, the KP&F plan for regular members was amended to include lump sum benefits in the KP&F benefit formula as "compensation." See K.S.A. 74-4902(9); K.S.A. 74-4952(13). In 1993, the plan for regular members was amended to define "salary" as excluding payment for accumulated sick leave or vacation leave. See L. 1993, ch. 227, § 10. The language of K.S.A. 13-14a08, which was enacted in 1945, requiring special members' pensions to be calculated on the basis of "monthly salary at the date of retirement" was not amended by the legislature.

Prior to September of 1992, the personnel clerk for the City, after consulting with KPERS, calculated the "monthly salary at the date of retirement" for members of its Local Plan based on 50% of salary and excluded all other categories of compensation paid such as overtime, holiday and sick leave, compensatory time, and vacation pay.

In 1992, the city manager met with Galindo to discuss possible revision of the pension formula for special members of KP&F. The city manager acknowledged that the City withheld three percent from all monetary compensation paid Galindo but did not include all forms of compensation in its certification to KPERS of Galindo's monthly salary at the date of retirement.

On September 3, 1992, the city manager sent a memo to the Coffeyville mayor and city commission acknowledging that the city manager was aware of the inequity of the City withholding three percent from benefits which were not included in calculating a member's monthly salary at the date of retirement. The memo states:

"As to how we arrived at this point and how this mistake was made, no one is certain. Interestingly enough this same phenomena has occurred across the state of Kansas. At a meeting I attended of city managers about two weeks ago, all

of them indicated that their situation was similar to ours and to that of Topeka and Hutchinson. Apparently what happened was when these retirement plans were enacted, police and fire employees' gross salary consisted only of a monthly salary. Subsequent to that time the additional benefits were implemented—some mandated by federal law, such as overtime compensation and holiday pay and some by contract agreement, such as call-out and accumulated comp. time. In as much as the mechanics of the deduction process had been computerized, the computer simply continued to deduct based on the compensation paid to an employee and somehow in the process of going about daily business our City, as well as other cities, failed to grasp the necessity to adjust that final certification to KP&F upon an employee's retirement."

The memo notes that KP&F staff indicated they would accept a formula which included gross compensation and agreed that the City could average gross compensation, including accumulated sick leave, over a three-year period to reasonably spread the extra compensation. The memo states:

"Both KP&F staff and City staff recognize that those employees who have previously retired have not been receiving their full retirement benefits considering the contributions made by both employees and the City."

The memo also addresses who should be required to pay back such employees and concludes that the opinion of the court, the attorney general, and KP&F is that repayment will be the City's responsibility. The memo concludes:

"The City should determine a formula for determining a final monthly salary and certifying it to KP&F upon an employee's retirement. The City should also determine the shortfall due to previously retired employees. These adjustments should be made for future retirees and past retirees because that is simply fair. However, should the City fail to do this, we can rest assured, as evidenced by the attached letter, that there will be litigation intended to force the City to make these adjustments. I prefer these adjustments be made by the City."

When Galindo retired on September 7, 1992, he was paid an hourly rate of $10.18 and worked 2,920 hours a year. Galindo received lump sum payments of $10,994.40 for 45 shifts of unused sick leave; $249.42 for one day of holiday pay; $244.32 for one personal day; $55.99 for 5.5 hours of compensatory time; and $3,965.56 for 16.231 unused vacation days. The City thus paid a total amount of $15,509.69 to Galindo upon retirement for accrued and unused benefits. Three percent of these payments were withheld by the City toward Galindo's pension.

Galindo initially suggested to the city manager that his monthly salary at the date of his retirement be calculated by multiplying $10.18 (his hourly wage at retirement) by 2,920 (the regular number of hours he worked per year) and dividing the product by 12 to obtain a monthly base rate of $2,477.13. Galindo further suggested that the monthly average of all other forms of additional compensation he received during his last 12 months of employment be added to his base monthly salary prior to computing his pension. Using his figures, Galindo would have received a pension of $1,956.12 per month under this proposed formula. This monthly pension benefit would equal approximately 79% of Galindo's base monthly salary at the time of retirement. When this proposal was rejected by the City, Galindo proposed another formula, using his base salary as previously calculated plus the monthly average of the additional compensation he received during his last 36 months, which, using his figures, would have resulted in a monthly pension of $1,578.93.

The city manager disagreed with both of Galindo's proposed formulas for retirement benefits under the Local Plan. Nevertheless, the City, without entering into an agreement with Local #265, revised its pension formula for members of the Local Plan. Based on prior practice and discussion with officials at KPERS, the City's new formula averaged all monetary compensation Galindo received over his last 36 months of employment to arrive at his monthly salary at the date of retirement. Under this formula, Galindo's final monthly salary at the date of retirement was certified to KPERS as $2,936.80. Galindo now receives one-half of that amount as a pension benefit, or $1,468.40. Under the formula the City used prior to 1992, Galindo would have received $1,238.57 (calculated by multiplying $10.18 times 2,920 and dividing by 12 to obtain a monthly base rate of $2,477.13, and then multiplying by 50% as per K.S.A. 13-14a08), $229.83 less than what he now receives.

Galindo asserted that because his hourly wage increased from $8.52 to $10.18 during the three years used in the City's formula, that formula violated K.S.A. 13-14a08 and *Singer*. Galindo sued the City for failing to pay him the appropriate pension upon his

retirement as a firefighter, alleging that the City was liable for breach of contract and for taking his property without due process of law, in violation of 42 U.S.C. § 1983.

The matter was tried to the court. Although the trial court upheld the City's determination that $1,468.40 was the proper amount of monthly pension benefits, the court's memorandum opinion stated that by averaging Galindo's monthly salary over his last three years of employment, the City had in effect reduced his "monthly salary at the date of retirement" under K.S.A. 13-14a08. The court observed that the statute specifically referred to "salary" and held that benefits payable at retirement, such as overtime and accumulated vacation, sick leave, and personal days not used, were "privileges or benefit options" which employees may be entitled to under their employment contract with the City, but not salary under K.S.A. 13-14a08. Referring to the statute, the court stated:

"These should not be designated salary or wages. To do so would artificially increase or inflate an employee's final monthly wage or compensation and thereby artificially increase retirement benefits.

"To permit an employee to artificially increase his retirement benefit would discriminate. For example, an employee who was required to use sick leave during the last year of employment would receive a lower retirement benefit than that of a healthy employee who is able to accumulate sick leave.

"The same circumstance is created by forgoing vacation privileges. Overtime pay is also not a fixed or guaranteed compensation. The fact that one employee may have had overtime in the last month (or months) before retirement should not entitle him to higher retirement benefits over an employee who did not have overtime. These contractual privileges do not increase the fixed salary or wage paid."

The trial court found that holiday pay which was payable whether the employee worked or not was additional wages under the statute and should be included in the pension calculation.

Concluding, the court stated:

"The fact that the City may have withheld three percent from these items of additional compensation for purposes of the issues raised here, does not require we consider those payments 'fixed wage or salary.'

". . . I find it was not appropriate to use a 36-month average to determine Mr. Galindo's 'final monthly salary.' However, using the formula I find appropriate, it appears the proper figure would be under the figure certified.

I therefore find the City did not commit an actionable breach of the contract of employment with Mr. Galindo. There is some question over what formula was appropriate, but that confusion was caused primarily by the non-specific language of the statute. The City used a formula based on past experience, other statute language, and guidance from KPERS, and the formula used was not unreasonable.

"I also find the City did not violate Mr. Galindo's constitutional rights."

Galindo appealed. This case was transferred to this court pursuant to K.S.A. 20-3018(c).

## Standard of Review

Galindo argues that the determination of the monthly pension payment he is entitled to under K.S.A. 13-14a08 is one of statutory construction and of law, in which case this court's scope of review is plenary or unlimited. *Steele v. City of Wichita*, 250 Kan. 524, 527, 826 P.2d 1380 (1992); *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1992); *Overbaugh v. Strange*, 18 Kan. App. 2d 365, 366, 853 P.2d 80 (1993). The City, on the other hand, asserts that this court's scope of review is controlled by K.S.A. 60-252, which requires that a trial court's findings of fact shall not be set aside unless clearly erroneous. The City argues that "[w]here the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993).

The issue before this court does not concern Galindo's credibility as a witness or whether evidentiary findings made by the trial court are supported by the record. Instead, this court is called upon to review the trial court's interpretation of K.S.A. 13-14a08 and the retirement contract to determine whether the trial court correctly determined the monthly pension due Galindo. Interpretation of a statute and the construction of a contract are questions of law. *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993); *City of Arkansas City v. Anderson*, 242 Kan. 875, Syl. ¶ 1, 752 P.2d 673 (1988). When determining questions of law, this court is not bound by the decision of the district court. *Me-*

*morial Hospital Ass'n, Inc. v. Knutson,* 239 Kan. 663, 668, 722 P.2d 1093 (1986).

### K.S.A. 13-14a08

K.S.A. 13-14a08 provides that a member who retires after 22 years or more of service and who is at least 50 years old is entitled to "monthly payments in amounts equal to fifty percent (50%) of such officer or member's monthly salary at the date of retirement." In addition to his hourly wage, Galindo received additional compensation from which the City also withheld three percent as a contribution for his pension.

The trial court construed "salary" as used in K.S.A. 13-14a08 to mean "a fixed or guaranteed compensation." The City notes that in Webster's Ninth New Collegiate Dictionary (1991) "salary" is defined as "fixed compensation paid regularly for services," as opposed to "compensation," which is defined as "something that constitutes an equivalent or recompense." The City asserts that "salary," as used in K.S.A. 13-14a08, refers to regular base salary, while "compensation," as used in K.S.A. 1993 Supp. 74-4952(6), includes base salary as well as other forms of pay received by KP&F regular members. The City argues that the trial court was correct in its interpretation of the statutory term "salary."

The City supports its assertion by pointing out that the KP&F regular plan was amended in 1991 (see K.S.A. 74-4902[9]) to allow the inclusion of lump sum benefits in the formula used to determine "compensation." L. 1991, ch. 237, § 6. The KP&F regular plan was amended again in 1993 to exclude payment for accumulated sick leave or vacation leave when determining retirement benefits. See L. 1993, ch. 227, §§ 10, 34. The City points out that while 74-4902(9) and 74-4952(13) have been amended twice, the language of K.S.A. 13-14a08 has remained unchanged since its enactment in 1945. The City argues that the absence of legislation supports a presumption that the legislature did not intend that the local plans include unused vacation or sick leave as "monthly salary at the time of retirement."

When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to

the amendment. *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990). In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. *State v. Gonzales*, 255 Kan. 243, Syl. ¶ 3, 874 P.2d 612 (1994).

When construing a statute, a court should give words in common usage their natural and ordinary meaning. *Bank IV Wichita v. Plein*, 250 Kan. 701, 705-06, 830 P.2d 29 (1992). Technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings. K.S.A. 1993 Supp. 77-201 *Second*; *Hudgens v. CNA/Continental Cas. Co.*, 252 Kan. 478, 483, 845 P.2d 694 (1993). "Salary" is generally regarded as a periodical payment dependent upon time. *State v. Bland*, 91 Kan. 160, 168, 136 Pac. 947 (1913). We conclude that the term "salary" as used in K.S.A. 13-14a08 means a periodic payment dependent upon time.

Galindo next argues that withholding three percent of his additional compensation without including it to calculate his pension constitutes a unilateral modification of his pension plan. The trial court rejected this argument, finding that although the City may have withheld three percent from these items of additional compensation, those payments were not "fixed wage or salary."

On appeal, Galindo asserts the trial court's conclusion is wrong. Galindo points out that both he and the City had agreed that the additional compensation should be included in determining his retirement compensation. The only dispute the parties have is the formula used in determining the amount of his pension.

We note that the relevant portion of the employment contract provides for amendment by mutual agreement. Both parties agreed that the method the City was using to calculate retirement under the contract was not fair. The intent of parties to modify a contract can be implied from their conduct if they do not continue to act according to the original terms of the contract. See

*W-V Enterprises, Inc. v. Federal Savings & Loan Ins. Corp.*, 234 Kan. 354, Syl. ¶ 3, 673 P.2d 1112 (1983). The trial court was wrong when it determined that the parties were bound by the statute and disregarded the employment contract when determining the formula for Galindo's retirement.

Galindo recognizes that although the additional compensation was not uniformly or consistently paid, the City withheld three percent of all additional compensation he earned. He asserts that once the City took the three percent for retirement it could not change the statutory method of calculating his pension.

Galindo first addresses base salary and argues that the City could not use a formula that averaged his base hourly wage over the three-year period under K.S.A. 13-14a08. Galindo argues that K.S.A. 13-14a08 requires that his $10.18 hourly wage at retirement averaged over 12 months be used in calculating his base salary for purposes of his pension.

Galindo acknowledges that in determining the amount of his pension the additional compensation paid could be calculated using either a 12-month or 36-month period. Galindo asserts that a 12-month average is the most reasonable approach because the City required firefighters to wait until retirement to be paid for those benefits.

The City asserts that Galindo's proposed formulas would: (1) rewrite Galindo's original contract with the City, granting him more than was bargained for at the time he became employed by the City; (2) lead to unreasonable and inequitable results depending on how much sick leave or vacation a firefighter used during the last year of employment; and (3) adversely affect the financial soundness of the retirement plan. The City acknowledges that neither party adequately addresses the contract in the appeal. The City notes that a clear and unambiguous contract will be enforced according to its terms. It points out that courts will not rewrite or insert terms that import an intent in an agreement that was never expressed at the time of execution and that courts should not rewrite the terms of the parties' contract to achieve an equitable result under the guise of contract construction. See *Quenzer v. Quenzer*, 225 Kan. 83, 85, 587 P.2d 880 (1978).

The primary rule in construction of any contract is to ascertain the intent of the parties, and such intent may best be determined by looking at the language employed and taking into consideration all the circumstances and conditions which confronted the parties when they made the contract. The legal effect of a written instrument is a question of law for the court to decide, and, regardless of the construction made by the trial court, on appeal a written instrument or contract may be construed and its legal effect determined by the appellate court. *City of Arkansas City v. Anderson,* 242 Kan. 875, Syl. ¶ 1.

In determining the intent of the parties, the employment agreement is of little help. The contract merely acknowledges the right of modification. In its finding of facts and conclusions of law, the trial court remarked that the pension it found to be appropriate was less than the amount Galindo presently receives. The trial court did not, however, set out the pension that it found to be appropriate. After finding the City's determination of the amount of the pension was correct, the trial court concluded that the 36-month formula used by the City did not comply with the statutory method of computing retirement.

Another interesting aspect of this case is the fact that Galindo was a "24-hour employee," which necessarily means that he worked over 40 hours a week. It is not clear from the record whether Galindo's weekly wage always included overtime. In other words, it is not clear how much, if any, overtime Galindo worked on a regular and consistent basis. The trial court simply did not include overtime in the formula it found appropriate. From the record, we are unable to determine the formula the trial court used or the amount of retirement it concluded that Galindo should have received under the statute.

A litigant must object to inadequate findings of fact and conclusions of law in order to give the trial court an opportunity to correct them. In the absence of an objection, omissions in findings will not be considered on appeal. Where there has been no such objection, the trial court is presumed to have found all facts necessary to support the judgment. *Tucker v. Hugoton Energy Corp.,* 253 Kan. 373, 378, 855 P.2d 929 (1993).

City retirement systems create contracts between a city and its employees who are members of the system. A participating member of the KP&F, a division of KPERS, has certain contractual rights based upon the statutes which create the retirement systems and which are a part of the employment contract. When a person accepts employment with a governmental entity and becomes a participating member of a retirement system, he or she gains certain rights which may not be eliminated or substantially changed by unilateral action of the governmental employer to the detriment of the member-employee. Retirement benefits are a valuable part of the consideration for entering into and continuing in public service, and a participating member of a governmental pension system has certain vested rights in the pension plan. *Brazelton v. Kansas Public Employees Retirement System*, 227 Kan. 443, Syl. ¶¶ 1, 2, 3, 4, 607 P.2d 510 (1980).

Under the facts of this case, the formula that the City ultimately decided on was a unilateral modification of Galindo's pension. The question is whether the plan the City adopted was a reasonable change or modification. If the change or modification of the pension plan resulted in a disadvantage to Galindo, that disadvantage must be accompanied by offsetting or counterbalancing advantages. See *Singer*, 227 Kan. at 367.

Had Galindo's pension been figured without any consideration of the additional compensation, he would have received approximately $230 less per month. The City could have refunded the three percent it deducted from the $15,509.69 lump sum paid at retirement, *i.e.*, $465.29, plus interest. It is clear that the City attempted to correct the inequity of its previous method of calculating pensions for members of the Local Plan. The City's new formula constitutes a reasonable change to accommodate changing conditions while maintaining the integrity of the system.

When the contract of employment between a city and a special member of KP&F provides that the parties can amend the pension plan, K.S.A. 13-14a08 does not prohibit the parties from increasing the retirement benefits required under the statute. Based on the facts of this case, the City made a reasonable change or modification in the pension plan. Though not the modification

requested by the employee, the change in the pension plan made by the City did not result in a disadvantage to the employee.

Affirmed.