(946 P.2d 104)
No. 76,254

In the Matter of the Estate of EDWARD A. MAXEDON, Deceased.

Opinion filed October 10, 1997.

*Clark Green*, of Passman & Jones, of Dallas, Texas, and *Kenneth Leyba* and *Ronald B. Rose*, of Curfman, Harris, Rose, Weltz, Metzger & Smith, of Wichita, for appellants beneficiaries.

*Dennis L. Gillen* and *Jack Scott McInteer*, of Depew and Gillen, L.L.C., of Wichita, and *John V. Black*, of Black's Law Office, of Pratt, for appellee People's State Bank.

Before BRAZIL, C.J., RULON, J., and PADDOCK, S.J.

RULON, J.: The beneficiaries of the Edward A. Maxedon Trust (beneficiaries) appeal the trial court's decision denying them relief on their claim that the trustee, The Peoples State Bank of Pratt (Bank), mismanaged certain real property within the trust and

breached the trustee's fiduciary duty owed to the beneficiaries of the trust. We affirm.

The material facts are as follows:

Edward A. Maxedon executed his last will and testament on March 18, 1949, and died on March 11, 1953. Maxedon's will established a trust to provide income for the lives of his brother and sister with a remainder interest for the benefit of their children and eventually terminating with distribution to certain named beneficiaries. The trust instrument provided that the trust would continue during the lives of Maxedon's brother and sister and terminate 20 years after the death of the surviving brother or sister. Upon termination of the trust, the trustee was to sell the remaining property in the estate and distribute the trust property to the named beneficiaries.

At inception, the trust consisted of real property, principally farmland and grassland located in at least three Kansas counties, which was valued at $112,150, and "other assets," including a mortgage and a bank account, valued at $3,048.60.

During the term of the trust, the Bank collected rents, oil and gas royalties, and crop income. For the years 1982 through 1992, the Bank valued the real property in the trust at approximately $658,000. Upon liquidation, the real property was sold for a total of about $479,000. The difference between the previously stated value of the land and the amount it actually sold for is the primary basis for this action.

In December 1993, the Bank filed a petition to make final distribution of the trust and to approve the final accounting. The beneficiaries filed an objection to that petition, essentially claiming the Bank breached its fiduciary duty by mismanaging the trust.

The action was tried to the district court. The court entered judgment in favor of the Bank on all claims. The beneficiaries perfected this appeal.

## SALE OF NON-WASTING ASSETS

The beneficiaries claim the district court erred in finding the

trust instrument specifically prohibited the sale of non-wasting real property prior to the termination of the trust.

"Under our standard of review, '[t]he legal effect of a written instrument is a question of law for the court to decide. On appeal, a written instrument or contract may be construed and its legal effect determined by the appellate court regardless of the construction made by the trial court.' *Galindo v. City of Coffeyville*, 256 Kan. 455, Syl. ¶ 2, 885 P.2d 1246 (1994). Whether an instrument is ambiguous is a matter of law to be decided by the court. *Mobile Acres, Inc. v. Kurata*, 211 Kan. 833, 839, 508 P.2d 889 (1973)." *In re Estate of Sanders*, 261 Kan. 176, 181, 929 P.2d 153 (1996).

"The same rules that apply to the construction of wills apply to the construction of trusts and most other written instruments." 261 Kan. 176, Syl. ¶ 2.

Essentially, the beneficiaries claim the Bank breached its duty as trustee by failing to diversify the trust assets so as to maximize the income of the trust and protect trust assets from market fluctuations.

After considering the beneficiaries' claims, the district court concluded:

"Accordingly, the Court concludes that the Trust of Edward A. Maxedon specifically prohibited the Trustee from selling Trust real estate during the course of the administration of the Trust; that none of the Trust real estate was 'nonproductive' as defined by Kansas law, except for the vacant Cunningham, Kansas, city lots sold by Court order in 1970 and that the Trustee properly and timely sold the Trust real estate upon termination of the Trust. The Trustee could not sell income producing Trust real estate under the terms of the Trust, even if it wanted to. (See also Restatement of Trusts 2d, 190.1.)"

We have carefully reviewed the trust instrument and conclude such instrument is not ambiguous or uncertain as to whether the trustee had the power to sell any of the non-wasting real estate included in the trust property. The trust instrument is simply silent on the issue of the trustee having such powers to sell non-wasting assets. Our research indicates a lack of controlling Kansas law to guide us. However, when Kansas appellate courts are faced with a lack of controlling authority directly on point they have frequently turned to the guidance found in the Restatement of Trusts. See 261 Kan. at 183.

The Restatement (Second) of Trusts § 190 (1957) provides:

"The trustee can properly sell trust property if
(a) a power of sale is conferred in specific words, or
(b) such sale is necessary or appropriate to enable the trustee to carry out the purposes of the trust, unless such sale is forbidden in specific words by the terms of the trust or it appears from the terms of the trust that the property was to be retained in specie in the trust."

The Restatement (Third) of Trusts § 190 (1990), revises the rule slightly:

"The trustee can properly sell trust property unless
(a) the terms of the trust expressly prohibit or condition the sale of some or all of the trust assets, or
(b) it appears from the terms of the trust and the circumstances that assets of the trust are to be retained in specie in the trust estate."
"There is a greater reluctance in the trust law to find a duty to retain land that had been purchased by the settlor for purposes of investment than to find a prohibition against sale of land that had been occupied as a residence by the settlor and his or her family . . . ." Restatement (Third) of Trusts § 190, Comment d.

In the instant case, the stated purpose of the trust was to pay income to the settlor's brother and sister during their lives and to their children upon the death of either of them. Upon the death of the last surviving sibling, the trust would continue for an additional 20 years, and then the trustee was to sell the assets of the trust and distribute them to the parties named in the trust and will. Consequently, the trial court was correct in finding that the primary purpose of the trust was to supply income to the settlor's brother and sister and their children and then liquidate and provide a payment in cash to the named beneficiaries.

"The cardinal rule is that the intention of the trustor as gathered from the whole instrument must control unless contrary to settled principles of law." *In re Estate of Pickrell*, 248 Kan. 247, 255, 806 P.2d 1007 (1991).

"[Our Supreme Court] has repeatedly held that extrinsic evidence is not admissible to show the intention of the testator where there is no ambiguity in the language used, or to give the language of the will a meaning different from that which the law attributes thereto." *Baldwin v. Hambleton*, 196 Kan. 353, 356, 411 P.2d 626 (1966).

"The primary consideration in construing a will is to determine the testator's intent. If that intent can be determined from the four corners of the will it is not necessary to give consideration to any other element. If the testator's intent cannot be determined from the will itself, the will is ambiguous and extrinsic evidence is admissible to assist in defining the intent of the testator." *McClary v. Harbaugh*, 231 Kan. 564, Syl. ¶ 2, 646 P.2d 498 (1982).

In absence of any controlling Kansas authority, the language of the Restatement (Second) of Trusts is instructive and we hold that in Kansas, a trustee has the power to sell non-wasting real estate held in trust as long as such sale furthers the purpose of the trust, unless there is a clear indication that such power is prohibited by the trust instrument. Under the facts shown here, the Bank possessed an implied power to sell the non-wasting real property as a reasonable and necessary power in light of the purpose of the trust.

## DUTY TO DIVERSIFY

Briefly said, the beneficiaries argue the Bank breached a fiduciary duty by not diversifying the trust assets under the "prudent man" standard.

Because this trust was established in 1955, the trustee's duties and powers are defined by the law in effect at that time, *i.e.*, G.S. 1949, 17-5004 (1955 Supp.), which reads:

"In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of the foregoing standard, a fiduciary is authorized to acquire and retain every kind of property, real, personal or mixed, and every kind of instrument . . . which men of prudence, discretion and intelligence acquire or retain for their own account, and within the limitations of the foregoing standard, a fiduciary may retain property properly acquired, without limitation as to time and without regard to its suitability for original purchase . . . ."

None of the parties argue that the current version of the Uniform Trustees' Powers Act, K.S.A. 58-1201 *et seq.*, which incorporates the prudent investor rule of K.S.A. 17-5004, has any application here. The current version of K.S.A. 17-5004 expressly states that it applies to all existing trusts, but only to the extent of any actions

or inactions occurring after the effective date of the 1993 amendment. It is uncontroverted that all the actions of the trustee that are at issue here occurred prior to the legislative adoption of the prudent investor rule.

The beneficiaries argue, however, that under the prudent man standard, a trustee had a duty to diversify the portfolio if consistent with the purposes of the trust and in the absence of a specific prohibition in the trust terms and conditions. Here, the district court found that under pre-1993 law the trustee was under no duty to diversify. As we understand the court's decision, the court found the Bank adequately examined the corpus of the trust on a regular basis and determined that, because the subject farm ground was productive, there was no need to diversify. The record is unclear whether the court recognized a duty to diversify or simply found that the Bank had not breached the duty.

The parties note there are no Kansas cases that discuss whether a trustee has a duty to diversify under the prudent man standard.

The Restatement (Second) of Trusts § 228 reads:

"Except as otherwise provided by the terms of the trust, the trustee is under a duty to the beneficiary to distribute the risk of loss by a reasonable diversification of investments, unless under the circumstances it is prudent not to do so."

In an article written shortly after the enactment of G.S. 1949, 17-5004, one commentator noted:

"It cannot be too much emphasized that the new statute does not relieve the trustees of responsibility for investment. On the contrary, it increases the trustees' responsibility by requiring them to justify their investments on the basis, not only of prudence and discretion, but of intelligence. Under this statute trustees are required to be both diligent and intelligent.
. . . .
"Inherent in the statute is the principle of diversification. This principle will in a great number of cases enable the trustees to build up the income of their trust to a reasonable extent without endangering the principal. That, primarily is the objective of the Act. . . .
. . . .
"It will also be observed that the Act, within the limits of the standard set, permits the retention of property properly acquired 'without limitations as to time and without regard to its suitability for original purchase.' This part of the Act places authorized retention on the basis of what an informed judgment would regard as best for the trust. This rule frees the trustees from any inflexible re-

quirement, often disadvantageous to the trust, of unloading within any fixed time investments which have ceased to qualify, or which, if received from the settlor, never qualified. Definitely, it does not authorize the trustee to rest inattentively on the assets and do nothing. Here, as in other cases, the statute requires of the trustees vigilance and intelligence." Fleeson, *The 1949 Kansas Investment Standards Act and a Necessary Corollary*, 18 J.K.B.A. 300, 303-04 (1949).

The Restatement (Second) of Trusts § 228, Comments a and b states:

"a. Duty to diversity investments. The trustee is under a duty to the beneficiary to exercise prudence in diversifying the investments so as to minimize the risk of large losses, and therefore he should not invest a disproportionately large part of the trust estate in a particular security or type of security. It is not enough that each of the investments is a proper investment . . . .

"b. Factors to be considered. In making a diversification of investments the trustee should consider among others the following factors: (1) the purposes of the trust; (2) the amount of the trust estate; (3) financial and industrial conditions; (4) the type of investment, whether mortgages, bonds or shares of stock or otherwise; (5) distribution as to geographical location; (6) distribution as to industries; (7) dates of maturity."

Scott on Trusts notes that where there is a duty to diversify, a trustee may be under a duty to dispose of a part of a given investment in order to bring about diversification. However, a trustee may be relieved of that duty by the express terms of the trust. Also, a trustee may impliedly be authorized to retain certain property which the settlor placed in the trust at its inception despite the fact such property makes up a large portion of the trust estate. 3 Scott on Trusts § 230.3 (4th ed. 1988). See 13 Bogart, Trusts and Trustees § 612, p. 50 (2d ed. rev. 1980).

We are convinced that in the absence of controlling Kansas law, the weight of authority tips the balance in favor of concluding that a trustee has a duty to diversify the trust assets in order to carry out the terms of the trust under the prudent man standard. The factors stated in Comment b of § 228 of the Restatement (Second) of Trusts, provide a guide as to how such decisions should be evaluated. There is authority for taking into account that a particular investment, which forms a large portion of the trust estate, was purchased and placed into the trust by the settlor. However, whether it is prudent to retain such an investment depends on

whether the settlor was a competent investor, given the purposes of the trust. Restatement (Second) of Trusts § 230, Comment j. See also Restatement (Second) of Trusts § 240, Comment g. (Where the terms of the trust generally authorize the trustee to retain trust property, such authorization may be interpreted as authorizing retention of property that is otherwise not a proper investment.).

Here, to the extent the district court found the trustee had no duty to diversify under the prudent man standard, the court erred. However, to the extent the court found that if such duty did exist, then the trustee did not violate such duty, we conclude the court did not err. Similarly, to the extent the court held that the trustee was excused from selling the property, we also conclude the court did not err. While the trust document did not expressly prohibit the trustee from selling the land, the trustee could properly have considered the fact that the subject land was placed into the trust by the settlor and comprised a majority of the corpus of the trust, thus indicating the settlor's intent that the land remain the primary asset of the trust.

## STANDARD OF CARE

Next, the beneficiaries argue the district court measured the Bank's actions by an incorrect standard of care. According to the beneficiaries, because the Bank has a trust department whose sole function is to manage trusts, it is a professional trustee and is thus held to a higher standard of care than the ordinary prudent man. Specifically, the beneficiaries argue the court erred in holding that they were required to produce expert testimony as to the duty owed by the Bank as trustee and whether there was any breach of that duty based upon the "community standard" rule.

While there are Kansas cases which deal generally with a trustee's duty to a beneficiary in managing a trust, there are no cases which address a professional trustee's standard of care.

"The Restatement (Second) of Trusts § 174 (1957) states: 'The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property.' Similarly, '[t]he trustee is under a duty to the beneficiary to administer the trust

solely in the interest of the beneficiary.' Restatement (Second) of Trusts § 170(1) (1957)." *Gillespie v. Seymour*, 19 Kan. App. 2d 754, 766-67, 876 P.2d 193, *rev. denied* 255 Kan. 1001 (1994).

"a. Standard of care and skill. The standard of care and skill required of a trustee is the external standard of a man of ordinary prudence in dealing with his own property. . . . On the other hand, if the trustee has a greater degree of skill than that of a man of ordinary prudence, he is liable for a loss resulting from the failure to use such skill as he has." Restatement (Second) of Trusts § 174, Comment a.

"d. Corporate trustees. If the trustee is a bank or trust company, it must use in selecting investments the facilities which it has or should have, and it may properly be required to show that it has made a more thorough and complete investigation than would ordinarily be expected from an individual trustee." Restatement (Second) of Trusts § 227, Comment d.

## Scott on Trusts comments:

"Is the standard of care and skill to which a trustee must conform different in the case of a corporate or other professional trustee from what it is in the case of an individual nonprofessional trustee? . . . If the trustee has greater skill or more facilities than others have he is under a duty to employ such skill and facilities. Moreover, as we have seen, if a trustee has held himself out as having a higher degree of skill or greater facilities than others have, he may incur a liability by failing to come up to the standard he has set. These principles are applicable to trust institutions. In holding corporate trustees liable for negligence, courts have not infrequently called attention to the fact that they have or hold themselves out as having special skill and special facilities." 2A Scott on Trusts § 174.1, pp. 472-73 (4th ed. 1987).

"[W]here a trustee has special or professional knowledge or skill, he ordinarily is under a duty to exercise such knowledge and skill, where applicable, in the administration of the trust.

. . . .

"Considering the reasoning that bankers, doctors, and lawyers should not be allowed to gain business as specialists and defend their mistakes as laymen, and in view of the more general awareness of consumer rights, it seems likely that the courts will increasingly adopt the view that a trustee representing itself as having greater knowledge and skill than the ordinary man is under a duty to exercise [a] degree of skill greater than that of an ordinary prudent man." Annot., 91 A.L.R.3d 904, 906.

But see *Security Trust Co. v. Appleton*, 303 Ky. 328, 197 S.W.2d 70 (1946) (court held professional trustee not subject to any heightened duty of care).

The logic stated above strongly supports a notion that if a trustee who represents that he, she, or it is a professional trustee, then such trustee should be held to a higher standard of care. The standard is that a professional trustee is bound to exercise such reasonable and prudent skill in management of the trust estate as the conditions require, taking into account the expressed directions of the settlor and the purposes of the trust. The extent and character of care in managing the trust that a trustee owes the beneficiaries depends on the circumstances of the particular trust, and the measure of such duty is that degree of care and diligence in management which is used by professional trustees generally in the same or a similar community. See *Mellies v. National Heritage, Inc.*, 6 Kan. App. 2d 910, 913, 636 P.2d 215 (1981).

We are convinced the weight of authority suggests the standard of care of a bank trustee is higher than an ordinary individual nonprofessional trustee, and we conclude such is the law in Kansas.

The above notion, however, leads to the next query: Is expert testimony as to the standard of care necessary to establish a breach of such a duty?

In Kansas, often the appellate courts have required expert testimony concerning the standard of care applicable to various professions. Similarly, expert testimony has been found necessary to determine whether the defendant has in fact violated such standard of care.

"The primary purpose of expert testimony is to establish the community standards for the benefit of the trier of fact when the facts are somewhat alien in terminology and the technological complexities would preclude an ordinary trier of fact from rendering an intelligent judgment." *Juhnke v. Evangelical Lutheran Good Samaritan Society*, 6 Kan. App. 2d 744, 748, 634 P.2d 1132 (1981).

In *McConwell v. FMG of Kansas City, Inc.*, 18 Kan. App. 2d 839, Syl. ¶ 5, 861 P.2d 830 (1993), *rev. denied* 254 Kan. 1007 (1994), this court noted:

"Expert testimony is generally required and may be used to prove the standard of care by which the professional actions of the attorney are measured and whether the attorney deviated from the appropriate standard. Expert testimony is required

with respect to a question that an ordinary person is not equipped by common knowledge and skill to judge."

Similarly, architectural procedures were found sufficiently technical and outside the realm of ordinary knowledge to warrant application of an "architectural community standard," thus requiring expert testimony as to questions of an architect's alleged negligence. But we concluded the "common knowledge exception" to this requirement was still applicable in an appropriate case. *Seaman U.S.D. No. 345 v. Casson Constr. Co.*, 3 Kan. App. 2d 289, Syl. ¶ 1, 594 P.2d 241 (1979).

We conclude that to establish the standard of care and a breach of that standard, it will ordinarily be necessary to present testimony of someone who is competent to testify as to whether the trustee's actions conformed to the standard of care for a professional trustee.

## BREACH OF FIDUCIARY DUTY

Here, the district court found the beneficiaries had failed to present any evidence that the Bank had failed in exercising its duty as a professional trustee to the degree of care and diligence in management which is used by professional trustees generally in the same or similar community. Such a finding is more consistent with the court recognizing that the standard of care was higher for professional trustees. It is also a negative finding.

" 'The effect of a negative finding by a trial court is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed.' [Citation omitted.]" *Mohr v. State Bank of Stanley*, 244 Kan. 555, 567-68, 770 P.2d 466 (1989).

The beneficiaries argue that the uncontroverted evidence showed that the Bank held over 90% of the trust assets in farmland and that in and of itself constituted a breach of fiduciary duty.

Unquestionably, over 90% of the trust property consisted of farmland. While the court erroneously concluded the Bank had no

duty to diversify, the court found the fact that the settlor selected the farmland and placed such land into the trust was an indication that the settlor felt such property was an appropriate investment for the trust. The court further found this fact was properly taken into account by the Bank in its management of the trust. The court further noted the land produced an average income of 4.85% for the life of the trust and the trust property had substantially appreciated over the life of the trust.

Next, the beneficiaries argue the Bank violated its duty by failing to make annual accountings. The beneficiaries point to testimony of the trust officer that some of the annual accountings did not contain all the required information.

The district court found the Bank filed annual accountings, which were in turn approved by the court, and further found the beneficiaries' testimony was inconsistent as to what accountings they received. The court concluded that the reports provided the beneficiaries all the required information as to the trustee's financial activities.

Absent a more complete argument by the beneficiaries which states exactly what statute applies and just what information was omitted, this issue fails. As the beneficiaries do not specify the error or cite legal authority supporting their contention, we need not address the issue. See *Enlow v. Sears, Robuck & Co.*, 249 Kan. 732, 744, 822 P.2d 617 (1991). Also, "[a]n issue which is not briefed is deemed abandoned." *State v. Wacker*, 253 Kan. 664, 670, 861 P.2d 1272 (1993).

Next, the beneficiaries claim the Bank breached its fiduciary duty by not conducting regular inspections of the property. However, the sum of this argument is that the authority and argument for this issue are contained in the beneficiaries' proposed findings of fact and conclusions of law, which are "in the record." Once again, failure to brief equals abandonment. Similarly, in the remaining issues the beneficiaries simply refer us to their trial brief and proposed findings of fact and conclusions of law. Such is not sufficient, and the court reminds the beneficiaries that their argument must be contained in their brief and a reference to some other brief is not proper argument.

The record shows that the beneficiaries presented the testimony of Ed Chapline, who was a stockbroker from Kansas City. The district court found that Chapline had never worked for a bank and had never been a trust officer, and while he had made recommendations to banks, had never been part of a trust department. The court further found Chapline had no expertise in real estate, nor was he aware of any standard of care a professional trustee would owe a beneficiary. Even though Chapline was allowed to testify, the court found he was not qualified as an expert on trust matters. The beneficiaries do not dispute this finding and conclusion.

Conversely, the Bank presented the testimony of W. Newton Male, a former State Banking Commissioner, who during his tenure set up the state trust examiners' system. Male also had worked in his spare time appraising farms in and around Wichita. Male testified that the fact the farmland was spread out over three counties and consisted of tillable land as well as pasture, plus the fact there was oil and gas production on some of the property, showed the trust was in fact diversified. While Male did not testify as to what the standard of care was, it was his opinion that the Bank did not breach its duty of care in managing the assets of the trust.

Our review of the record convinces us the beneficiaries failed to present competent testimony of the trustee's standard of care and how the trustee's actions violated that standard of care. Conversly, the Bank did present competent testimony that indicated that the Bank's actions did not breach the applicable standard of care. Thus, we conclude the court did not err on this point.

## ACTUAL DAMAGES

Last, the beneficiaries argue the district court erred in finding they had failed to prove actual damages. The totality of the beneficiaries' argument is that "[a]bundant evidence exists in the record to enable the Court to fashion an equitable remedy in compliance with the guidelines set forth in the Restatements of Trusts. That evidence is cited and discussed at length in the Proposed Findings of Fact and Conclusions of Law and Brief in Support filed by the Beneficiaries . . . ." The beneficiaries have again failed to state in their brief what evidence they presented at trial or the extent of

damages such evidence would prove. Therefore, this issue is abandoned.

The judgment of the district court is affirmed.