Joseph O'Sullivan Reno County Counselor 315 West First Street P.O. Box 2067 Hutchinson, Kansas 67501
Dear Mr. O'Sullivan:
As Reno County Counselor, you request our opinion regarding the use of emergency telephone service (911) funds for certain items associated with the operation of the emergency telephone system. The Legislature has restricted the use of 911 funds to the following items:
 "(b) Funds collected from tax imposed pursuant to K.S.A. 12-5302 . . . shall be spent solely to pay for any or all of the following: (1) The monthly recurring charges billed by the service supplier for the emergency telephone service; (2) initial installation, service establishment; nonrecurring start-up charges billed by the service supplier for the emergency telephone service; (3) charges for
capital improvements and equipment or other physical enhancements to the emergency telephone system; or (4) the acquisition and installation of road signs designed to aid in the delivery of emergency service."[1]
The costs in question are: (1) repairs to damaged radio transmission equipment and an antenna used to transmit 911 traffic to law enforcement officers; (2) a replacement battery for 911 microphone equipment; (3) computer software to update the 911 computer system; (4) fees for a service agreement to maintain the 911 computer hardware; (5) an annual maintenance fee for the Computer Aided Dispatch (CAD) system; (6) monthly fees for a service agreement to maintain mobile data terminal (MDT) equipment; and (7) an annual fee for servicing the MDT software component.
When considering whether certain equipment[2] fell within the spending parameters of K.S.A. 12-5304(b), Attorney General Robert T. Stephan was initially concerned with whether the equipment to be purchased constituted a part of the emergency telephone service network and, if so, whether the purchases contributed to the "common purpose of providing a 911 emergency telephone number."[3] However, this is not the issue in Reno County's situation because you indicate that the items are part of the emergency telephone service network.
The issue then is whether these costs are for "equipment or other physical enhancements to the emergency telephone system." If so, then 911 funds can be used. If not, the county will have to utilize some other funding source.
The starting point in construing a statute is the statutory language itself which governs if unambiguous and rational.[4] However, if a statutory provision is susceptible to more than one interpretation, a court must determine legislative intent which often can be gleaned from the historical background and changes to the statute.[5]
Are repairs to a 911 network "equipment or other physical enhancements"? Is computer software "equipment" or a "physical enhancement"? Are service contracts that are necessary to update and maintain the 911 system a "physical enhancement"? As "charges for equipment or other physical enhancements" can be interpreted to include or exclude these items, it is our opinion that K.S.A. 12-5304(b) is ambiguous and, therefore, resort to legislative history is necessary to illuminate what the Legislature intended for use of 911 funds.
In 1980, 911 funds could be spent only for "monthly recurring charges billed by the service supplier."[6] In 1983, the Legislature rejected the requests of Sedgwick County and the League of Kansas Municipalities to expand the usage of 911 funds to pay for "any cost of providing . . . emergency telephone service."[7] At that time, Sedgwick County wanted to use its 911 funds to expand its existing system to pay for the following items:
"1. installation of basic system.
"2. monthly recurring charges.
"3. enhancements to existing system
"4. purchase of 911 equipment from another supplier.
 "5. any other purpose that has a direct relationship to the provision of the emergency telephone reporting system."[8]
Southwestern Bell objected to this expanded use of 911 funds as being unfair to telephone customers who were "singled out" to fund local units of government.[9]
After a compromise was reached between bill proponents and telephone companies, the Legislature amended K.S.A. 12-5304 to expand the use of 911 funds for: "(1) initial installation, service establishment, and nonrecurring startup charges billed by the service supplier and (2) charges for capital improvements and enhancements to the emergency telephone system billed by the service supplier for the emergency telephone service."[10]
In 1988, Sedgwick County returned to the Legislature to request an amendment to K.S.A. 12-5304 so that the County could use 911 funds to install and maintain a Computer Aided Dispatch (CAD) system.[11] A CAD system forwards the location of each emergency simultaneously to law enforcement, fire and EMS dispatchers, which reduces the response time in emergency situations. The County estimated an initial cost of $600,000with annual operating costs of $20,000.[12] Acceding to the County's request, K.S.A. 12-5304(b) was amended to allow 911 funds to be used for "charges for. . . equipment or other physical enhancements to the emergency telephone system billed by the service supplier for the emergency telephone system."[13]
While the legislative history is less than clear regarding whether "equipment or other physical enhancements" includes the annual operating costs for an emergency telephone system and, more importantly, what those costs would include [i.e. software and computer hardware updates and/or maintenance contracts], it is our opinion that as the members of the legislative committee were aware that Sedgwick County was requesting the amendment so that the County could use 911 funds for both the initial cost and the annual operating costs for the CAD system, the current statutory language allows the use of 911 funds for annual operating costs related to an emergency telephone system's equipment including computer software, hardware and maintenance or service agreements.
We note that Legislative Post Audit in 1999 reviewed how counties were spending 911 revenue. The auditors noted that there was a "considerable difference of opinion" whether certain types of expenditures were allowable.[14] The auditors recommended that the Legislature revisit statutory limitations on 911 spending and amend the statute.[15] We agree with this recommendation.
Regarding the charges at issue here, except for the replacement battery which is clearly "equipment," the remainder could fall within the parameters of annual operating costs for an emergency telephone system which the Legislature apparently blessed in 1988. As this is a question of fact, it is our opinion that, until the Legislature provides guidance to municipalities, a governing body can utilize 911 funds to pay for charges related to an emergency telephone system's equipment, including computer software, hardware and maintenance or service agreements where the governing body determines that the cost is part of the system's annual operating cost.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Mary Feighny Assistant Attorney General
PK:JLM:MF:jm
[1] K.S.A. 12-5304 (emphasis added).
[2] Telephone lines, 911 monitors/printers, station consoles, base station and repeaters, antennas, pagers, mobile radios, recording equipment. Attorney General Opinion No. 90-87.
[3] Id.
[4] In re Hartman, 110 B.R. 951 (D. Kan. 1990). State v. V.F.W. PostNo. 3722, 215 Kan. 693 (1974) ("legislative intent must be found from the language of the statute and where language used is plain and unambiguous and also appropriate to an obvious purpose, the court should follow the intent as expressed by the words used").
[5] Galindo v. City of Coffeyville, 256 Kan. 455 (1994) ("in determining legislative intent, courts are not limited to mere consideration of language used, but may look to historical background of the enactment, circumstances attending its passage, purpose to be accomplished, and the effect the statute may have under various constructions suggested").
[6] L. 1980, Ch. 179, § 4.
[7] 1983 H.B. 2167.
[8] Minutes, House Committee on Communications Technology, March 1, 1983, Attachment 2 (Testimony of Kenneth Duckworth, Director of Communications, Sedgwick County).
[9] Minutes, House Committee on Communications Technology, March 1, 1983.
[10] L. 1984, Ch. 79, § 1.
[11] Minutes, Senate Committee on Transportation Utilities, Feb. 4, 1988, Attachment 2 (Testimony of Kenneth Duckworth, Director, Wichita-Sedgwick County Dept. of Emergency Communications).
[12] Id.
[13] L. 1988, Ch. 81, § 1.
[14] Performance Audit Report: Reviewing the 911 Emergency PhoneSystems in Kansas, Part II: Federal Mandates and OrganizationalStructure, August, 1999, p. 25.
[15] Id. at 27.