No. 68,483

Mary Kay Hudgens, *Appellee,* v. CNA/Continental Casualty Company, *Appellant.*

(845 P.2d 694)

Opinion filed January 22, 1993.

*Greer Gsell,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause and was on the briefs for appellant.

*M. William Syrios,* of Post, Syrios & Kinch, of Wichita, argued the cause and was on the brief for appellee.

*Wayne T. Stratton* of Goodell, Stratton, Edmonds & Palmer, of Topeka, was on the brief for *amicus curiae* The Kansas Health Care Stabilization Fund.

The opinion of the court was delivered by

HERD, J.: This is an action against an insurance company for interest arising out of the delayed payment of a settlement agreement. Pursuant to K.S.A. 1991 Supp. 40-2,126, the district court ordered CNA/Continental Casualty Company (CNA) to pay Mary Kay Hudgens $7,957.59 in interest. We reverse.

On February 8, 1990, Hudgens brought a medical malpractice suit against Stephanie F. Nellis, M.D., Joseph R. Miranda, M.D., and The Wichita Clinic, P.A., claiming damages for failing to timely diagnose and treat Hudgens' breast cancer. The doctors' primary professional liability insurance is provided by CNA, which hired Amy Lemley to represent the defendants in that matter.

In September 1991, Hudgens' attorney, Bill Syrios, and Jerry Remick, a claims specialist for CNA, entered into settlement discussions involving amounts in excess of $400,000. CNA's maximum coverage for the suit was $400,000, $200,000 for each doctor. Therefore, any settlement in excess of $400,000 would require a contribution from the Health Care Stabilization Fund (Fund). On September 24, 1991, CNA tendered its $400,000 combined policy limits to the Fund and requested the Fund continue handling the suit. Lemley continued to represent the doctors on behalf of the Fund. On September 26, 1991, Remick and Syrios agreed to a total settlement of $499,940 after the Fund advised Remick it would contribute $99,940 to the proposed settlement. The Fund had no direct contact with Syrios during the settlement

negotiations and Lemley was not involved in the discussions regarding the settlement amount.

On October 1, 1991, CNA issued and sent a check, in the amount of $106,614, to an annuity company as provided for by the settlement agreement. CNA also sent a check in the amount of $293,386 to the Fund, thereby expending its $400,000 policy limit. On October 9, 1991, Lemley notified Syrios that before any claim could be paid by the Fund the district court had to hold a hearing and approve the settlement, pursuant to K.S.A. 40-3410(c). On October 25, 1991, the district court conducted the settlement hearing and approved the settlement agreement, approved attorney fees pursuant to K.S.A. 7-121b, and dismissed the case with prejudice. On the same day, the parties executed the settlement agreement, and Hudgens also executed a release of all claims.

On November 12, 1991, the Fund received a certified copy of the journal entry approving the settlement agreement. On November 15, 1991, the Fund issued its check for $393,326 ($293,396 + 99,940 = $393,326) payable to Hudgens and her attorney. On November 18, 1991, the Fund mailed this check to Lemley. On the following day, Lemley presented the check to Hudgens and her attorney, who released CNA at that time. Commencing in November 1991, Hudgens began receiving $600 per month as provided for in paragraph 2 of the settlement agreement.

On November 20, 1991, Syrios wrote to Lemley demanding payment of interest at the rate of 18% per annum because CNA's settlement payment was not made within 30 days of reaching an agreement between Hudgens and CNA. Lemley denied any interest was due because the settlement agreed to on September 26, 1992, was a proposed settlement until the trial court approved it on October 25, 1991, and Hudgens had received payment of the settlement within 30 days of that date. On January 24, 1992, Hudgens filed her petition in this matter, claiming CNA owed her interest at the rate of 18% per annum on the unpaid settlement from the date of the agreement, September 26, 1991, until payment on November 19, 1991. Hudgens also prayed for attorney fees and costs.

The parties waived trial or hearing in this case and submitted the dispute to the trial court based upon stipulated facts. Included in the stipulation is the following statement: "Neither the Fund, nor the Kansas Department of Insurance have written rules or regulations setting forth specific procedures which govern how health care provider claim settlements involving both insurance company and Fund money are to be handled." The district court judge issued a letter opinion stating in part:

"I find that CNA acted as the agent for the Fund in settling the claim and then CNA chose the Fund as its agent for payment of a portion of its obligation under the settlement. Therefore, CNA must bear the results of the failure of the Fund to pay the claimant until November 19, 1991. Interest is awarded to Ms. Hudgens at the rate of 18% per annum from the date of the agreement of September 26, 1991, to November 19, 1991, on $293,386.00."

Thus, CNA was ordered to pay $7,957.59.

Because all the evidence in this matter was submitted to the trial court on an agreed stipulation of facts and documentary evidence, this court has the same opportunity to examine and consider the evidence as did the trial court and to determine de novo what the facts establish. *Kneller v. Federal Land Bank of Wichita*, 247 Kan. 399, 400, 799 P.2d 485 (1990).

CNA first claims the 30-day payment provision of K.S.A. 1991 Supp. 40-2,126 does not start to run until the insurance settlement is approved by the district court pursuant to K.S.A. 40-3410 when the Health Care Stabilization Fund is involved.

K.S.A. 1991 Supp. 40-2,126 provides:

"Except as otherwise provided by K.S.A. 40-447, 40-3110 and 44-512a, and amendments thereto, each insurance company . . . which fails or refuses to pay any amount due under any contract of insurance within the time proscribed herein shall pay interest on the amount due. If payment is to be made to the claimant and the same is not paid within 30 calendar days after the amount of the payment is agreed to between the claimant and the insurer, interest at the rate of 18% per annum shall be payable from the date of such agreement."

In 1976, the legislature created the Health Care Stabilization Fund "[f]or the purpose of paying damages for personal injury or death arising out of the rendering of or the failure to render professional services by a health care provider" who has qualified for coverage. K.S.A. 1991 Supp. 40-3403(a). One of the Fund's

functions is to pay "[a]ny amount due from a judgment or settlement which is in excess of the basic coverage liability of all liable resident health care providers." K.S.A. 1991 Supp. 40-3403(c)(1). The Insurance Commissioner administers the Fund. K.S.A. 1991 Supp. 40-3403(a).

The Fund must follow certain procedures in accordance with K.S.A. 40-3410 when paying a settlement. That statute provides:

"When the insurer of a health care provider or inactive health care provider covered by the fund has agreed to settle its liability on a claim against its insured or when the self-insurer has agreed to settle liability on a claim and the claimant's demand is in an amount in excess of such settlement; . . . the claimant and the [insurance] commissioner may negotiate on an amount to be paid from the fund. . . . In the event the claimant and the commissioner agree upon an amount the following procedure shall be followed:

(a) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider . . . for approval of the agreement between the claimant and the commissioner.

(b) The court shall set such petition for hearing as soon as the court's calendar permits . . . .

(c) At such hearing the court shall approve the proposed settlement if the court finds it to be valid, just and equitable.

(d) In the event the settlement is not approved, the procedure set forth in K.S.A. 40-3411 shall be followed."

CNA claims the agreement between the parties did not exist until the trial court approved it. In contrast, Hudgens argues the settlement occurred during the discussion between Hudgens' attorney and CNA's employee on September 26, 1991. This argument is interrelated with CNA's next contention that K.S.A. 40-3410 is a specific statute and, therefore, governs over the general statute, K.S.A. 1991 Supp. 40-2,126.

The rules of statutory construction are well settled. We have stated: "When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears the legislature intended to make the general act controlling." *State v. Wilcox,* 245 Kan. 76, Syl. ¶ 1, 775 P.2d 177 (1989).

The legislature has enacted the following rules:

"In the construction of the statutes of this State the following rules shall be observed, unless the construction would be inconsistent with the manifest intent of the legislature or repugnant in the context of the statute:

. . . .

"*Second.* Words and phrases shall be construed according to the context and the approved usage of the language, but technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings." K.S.A. 1991 Supp. 77-201.

Hudgens argues the provisions of K.S.A. 40-3410 apply only to the Fund and in no way conflict, change, alter, or negate the application of K.S.A. 1991 Supp. 40-2,126 to CNA. She contends CNA has mistakenly taken the position that it is somehow placed in the Fund's shoes merely because the Fund was involved in the settlement of Hudgens' medical malpractice suit. In the alternative, assuming there is a conflict between the two statutes, Hudgens argues K.S.A. 1991 Supp. 40-2,126 controls because it was enacted in 1989 and therefore is the latest legislative expression. See *Farmers State Bank & Trust Co. of Hays v. City of Yates Center,* 229 Kan. 330, 338, 624 P.2d 971 (1981).

The trial court judge agreed with Hudgens' argument that the statutes do not conflict. He stated in his letter opinion K.S.A. 1991 Supp. 40-2,126 exempts three specific areas, but does not exempt the Fund or CNA. Although CNA paid out the agreed settlement amounts on October 1, 1991, K.S.A. 1991 Supp. 40-2,126 requires payment be made to the claimant. Because CNA paid the Fund and not Hudgens, the trial court concluded CNA violated the statute.

As an alternative argument, CNA contends K.S.A. 40-2,126 does not apply and, even if it did, its terms were not breached. CNA contends the statute does not apply because (1) there was no failure or refusal to pay; (2) there was no amount due Hudgens prior to the settlement hearing on October 25, 1991; (3) there was no contract of insurance between Hudgens and CNA which is required by the statute; and (4) until there was a written agreement and the trial court approved it the parties had not agreed upon a settlement, only a proposed settlement.

Hudgens argues K.S.A. 40-2,126 does apply and that she was a third-party beneficiary to the insurance contracts between the doctors and CNA.

CNA also argues Hudgens is estopped from bringing this action because, by signing the release of all claims and accepting the

settlement check offered to her on November 19, 1991, she released CNA from this and any other claim related to the underlying medical malpractice suit. The release states in part:

"WHEREAS, I, Mary Kay Hudgens . . . heretofore made claim against Stephanie Nellis, M.D. and Joseph Miranda, M.D. and Continental Casualty Company [CNA] under Policy Number CCP3011315 heretofore issued by the said Company.

"NOW THEREFORE, IN CONSIDERATION of the Settlement Agreement attached hereto, and made a part hereof, being of lawful age, do hereby release, acquit, and forever discharge Stephanie Nellis, M.D. and Joseph Miranda, M.D. and Continental Casualty Company under Policy Number CCP 3011315, and the Wichita Clinic, the Health Care Stabilization Fund (Fund), and Ron Todd, Commissioner of Insurance and Administrator of the Fund, and all other persons, firms and corporations, their heirs, successors and assigns, who might be liable of and from any and all actions, causes of action, claims, liens, demands, damages on account of, or in any way growing out of, any and all known and unknown personal injuries resulting or to result from a certain incident which occurred on or about the 4th day of September, 1990, at or near Wichita, Kansas."

For support, CNA cites *Mohr v. State Bank of Stanley*, 241 Kan. 42, 49, 734 P.2d 1071 (1987), in which we stated: "Equitable estoppel exists when a party, by its acts, representations, admissions, or silence, induced another party to believe certain facts existed upon which it detrimentally relied and acted." Hudgens, however, argues the release does not protect CNA; instead, it applies only to the parties in the original medical malpractice suit, the two doctors, and the Wichita Clinic. Hudgens contends she did not release CNA from following K.S.A. 1991 Supp. 40-2,126.

We hold the preliminary agreement between the parties as of September 26, 1991, was subject to court approval because it involved the Fund and, therefore, was not a completed settlement until October 25, 1991. The amount owed was paid on November 19, 1991, well within the 30-day provision of K.S.A. 1991 Supp. 40-2,126. Since this is dispositive of the issue herein, we do not reach the other arguments of Hudgens.

Hudgens claims she is entitled to reasonable attorney fees because of CNA's refusal to pay the interest that was due and owing in violation of K.S.A. 40-256.

Hudgens did not cross-appeal from the district court's order which denied attorney fees pursuant to K.S.A. 40-256 and, thus,

this issue is not before us. See *Snodgrass v. State Farm Mut. Auto. Ins. Co.,* 246 Kan. 371, 379, 789 P.2d 211 (1990).

The judgment of the district court is reversed, and judgment is entered for CNA.