No. 75,707

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL NO. 64, *et al.*, *Appellees,* v. CITY OF KANSAS CITY, KANSAS, *Appellant,* and KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, *Defendant.*

(954 P.2d 1079)

Opinion filed March 6, 1998.

*Daniel B. Denk* and *Carl A. Gallagher,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, were on the briefs for appellant.

*George E. Mallon,* of Kansas City, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff firefighters brought an action on behalf of the members of firefighters' local union, and all others similarly

situated, against the City of Kansas City (City) and the state employees retirement system for damages and declaratory and injunctive relief, challenging the calculation of retirement benefits under the City's local pension plan administered by the State. The district court entered an order requiring the City to recalculate retirement benefits by including final income lump sum payments for accumulated vacation time, sick leave, and compensatory time averaged over the employee's last 3 years of employment. The district court also granted leave for additional named and unnamed plaintiffs to intervene in the judgment.

On appeal, the Court of Appeals affirmed the district court's order allowing permissive intervention, subject to statute of limitations defenses. The Court of Appeals reversed the district court order requiring the recalculation of benefits to include lump sum payments and remanded with directions to enter a judgment requiring the City to refund plaintiffs the 3 percent retirement contributions it deducted from the lump sum payments, plus interest. We granted review pursuant to K.S.A. 60-2101.

Plaintiff International Association of Firefighters, Local No. 64 (IAFF) is the exclusive collective bargaining representative for employees of the City Fire Department with the rank of captain or below, excluding confidential and supervisory employees. Plaintiffs James Long and Ronald Cooper were both hired by the City as firefighters before January 1, 1967. Plaintiffs Long and Cooper were "special members" of the Kansas Police & Firemen's Retirement System (KP&F) and contributed 3 percent of their compensation to the retirement plan. While KPERS administers the City's retirement plan, it remains the City's responsibility to withhold contributions, send those contributions to KPERS, and advise KPERS of the employee's monthly salary at the time of retirement.

This court reviewed the history of pension funds for police and fire departments in *Galindo v. City of Coffeyville*, 256 Kan. 455, 885 P.2d 1246 (1994):

"In 1945, the Kansas legislature enacted K.S.A. 13-14a01 *et seq.*, which required Kansas cities of the first class to establish pension funds for police and fire departments. Cities were required to pay the retired member monthly payments in

an amount equal to 50% of the member's monthly salary at the date of his or her retirement. . . .

"In 1961, the Kansas Legislature enacted K.S.A. 74-4901 *et seq.*, creating the Kansas Public Employees Retirement System (KPERS). Originally, KPERS covered only those municipal employees not covered or eligible for another retirement plan authorized under Kansas law. In 1965, the Kansas Legislature enacted K.S.A. 74-4951 *et seq.*, creating the Kansas Police and Firemen's Retirement System (KP&F) as a division of KPERS.

"In 1967, the KP&F legislation was amended to allow any city employing police officers or firefighters and individual participants in existing city plans to join KP&F. L. 1967, ch. 431, § 3. In 1976, the legislature significantly altered the operation of local police and firefighter's pension plans. The 1976 legislation extended an invitation to members of local police and firefighters pension plans to become regular members of KP&F by filing a written statement of election. L. 1976, ch. 348, § 3. Regular members' contributions to KP&F were seven percent. Anyone who did not elect to join as a regular member became a 'special member.' Special members' contributions to KP&F were increased from three percent to seven percent, but each special member was only entitled to the pensions and other benefits, rights, and privileges to the extent provided under their local plan. L. 1976, ch. 348, § 5." 256 Kan. at 456-57.

As a result of court decisions after 1967, it became impermissible to withhold identical contributions from employees' monthly salaries without paying similar benefits at retirement. See *Singer v. City of Topeka*, 227 Kan. 356, 369, 607 P.2d 467 (1980). In 1980, the *Singer* court ordered that amounts withheld in excess of 3 percent of the special members' compensation be refunded. 227 Kan. at 369. Shortly after the decision in *Singer*, the United States District Court for the District of Kansas determined that those employees who had elected to become regular members of KP&F be given the opportunity to revoke their election, return to special member status, and receive a refund of their excess contributions. *Odle v. Kansas Police and Firemen's Retirement System*, No. 80-4080 (D. Kan. December 15, 1980).

After *Odle* was decided, plaintiffs Long and Cooper revoked their elections and returned to the local retirement plan as "special members" of KP&F. Their payroll contributions dropped from 7 percent to 3 percent, and both received refunds for those contributions made in excess of 3 percent during the time they were regular KP&F members. The election documents executed by

Long and Cooper allowing them to return to "special" status stated that they were entitled only to benefits under the local plan, *i.e.*, monthly benefits of 50 percent of their final monthly salary after 22 years of service and being 50 years old.

Plaintiff Long retired as a special member on July 1, 1992, after approximately 33 years as a firefighter. His regular monthly salary at the time of retirement was $5,778.62 plus $100 per month longevity pay. At retirement, Long received a lump sum pre-tax payment of $50,405.11 for unused vacation, sick leave, and compensatory time accrued over the course of his employment. The City withheld 3 percent of the lump sum, or $1,512.15, as a contribution to the retirement system. In calculating retirement benefits, the lump sum payment was not included as part of Long's monthly salary certified to KPERS, despite the fact 3 percent was withheld from the lump sum as a contribution to the retirement plan.

Plaintiff Cooper retired as a special member on February 15, 1993, after approximately 36 years as a firefighter. His regular monthly salary was $3,987.18 plus $100 per month longevity pay. At retirement, Cooper received a lump sum pre-tax payment of $34,738.50 for unused vacation, sick leave, and compensatory time accrued over the course of his employment. The City withheld 3 percent of the lump sum, or $1,042.16, as a contribution to the retirement system. In calculating retirement benefits, the lump sum payment was not included as part of Cooper's monthly salary certified to KPERS.

IAFF, Long, and Cooper then sought damages and declarative and injunctive relief based upon the improper calculation or retirement benefits under their local pension plan administered by KPERS. As part of their lawsuit against the City and KPERS, plaintiffs requested class certification for all special members of KP&F, whether active employees or retirees. After the City filed a motion for summary judgment, the district judge, in a letter decision, denied the motion and found that

" '[o]ther compensation' [unused vacation, sick leave, and compensatory time] of 'special members' is required to be included in final income for the purpose of calculating retirements benefits. To do otherwise would allow retirement contribution deductions to be made (as they were) from funds upon which no benefits

would accrue. Such a result would be not only inequitable, but contrary to the obvious understanding of the parties as reflected by their acts.

"In recalculating the addition of these funds into final income levels, of course, the lump sums paid at careers' end should not be included as if they were all earned in that final year. This would be unfair to the retirement system and contrary to clear fact. The parties are directed to agree upon some equitable method which will approximate an earnings level including the 'other compensation' in a manner which attributes the additional earnings to those years in which the right to ultimately collect the same was acquired."

The district judge granted KPERS's motion for dismissal from the suit on KPERS's representation that when final retirement benefits were recalculated, KPERS would pay accordingly. The City filed an interlocutory appeal which was dismissed by the Court of Appeals as premature.

After the City's interlocutory appeal was dismissed and the parties were unable to agree upon a method of recalculation of benefits, the district court entered an order adopting plaintiffs' method. This formula averaged the lump sum payment over the 36 months preceding retirement to determine members' monthly salary at the date of retirement. (The City had suggested a formula averaging the lump sum payment over the course of the retirees' employment.) The district judge also denied class certification and allowed 79 additional named plaintiffs and 50 unnamed plaintiffs to intervene in the judgment.

The district court's order regarding recalculation of the benefits stated:

"The parties have failed to reach a final agreement. Both parties have submitted proposed methods for calculating salary. However, Defendant has made clear that any proposal is not to be construed as an agreement. Rather, Defendant intends to appeal the Court's decision.

"The parties concede that they are unable to reach an agreement as to what an equitable calculation is. Therefore, the Court has been called upon to terminate the unduly extended litigation in this matter. Defendant argues that the Court failed to consider the legal issues and decided a contractual issue on an equitable basis. However, under Kansas law 'the State or a municipality may make reasonable changes or modification in pension plans in which employees hold a vested interest, but changes which result in disadvantages to employees must be accompanied by offsetting or counterbalancing advantages.' *Galindo v. City of Coffeyville*, 256 Kan. 455 (1994) citing *Singer v. City of Topeka*, 227 Kan. 356, 607 P.2d 467 (1980). Drawing upon additional compensation for retirement funds without

supplying corresponding benefits results in a disadvantage to employees. Yet the City has not offered to supply a counterbalancing advantage.

"Contrary to Defendant's assertion, the *Galindo* case is squarely on point. In *Galindo*, the City of Coffeyville was faced with exactly the same problem as Kansas City is here. However, when the City of Coffeyville was faced with the realization that retirement funds had been withheld and no corresponding benefits had been paid, the city sought to remedy the situation. Unilaterally the city increased compensation by averaging in compensation earned over a 36-month period. Galindo argued that averaging compensation over a 12-month period would have been more reasonable. When the Kansas Supreme Court considered the offer made by the city it concluded:

'Under the facts of this case, the formula that the City ultimately decided upon was a unilateral modification of Galindo's pension. The question is whether the plan the City adopted was a reasonable change or modification. If the change or modification of the pension plan resulted in a disadvantage to Galindo, that disadvantage must be accompanied by offsetting or counterbalancing advantages. See *Singer*, 227 Kan. at 367.

'Had Galindo's pension been figured without any consideration of additional compensation, he would have received approximately $230 less per month. The City could have refunded the three percent it deducted from the $15,509.69 lump sum paid at retirement, *i.e.*, $465.29, plus interest. It is clear that the City attempted to correct the inequity of its previous method of calculating pensions for members of the Local Plan. The City's new formula constitutes a reasonable change to accommodate changing conditions while maintaining the integrity of the system.' *Id.* at 468."

## The district court then reasoned:

"Here, the City of Kansas City has not made a reasonable attempt to rectify the situation. Instead the City asserts that no additional compensation is due. Therefore, it has been left to the Court to determine what constitutes a reasonable offsetting or counterbalancing advantage.

"Due to the court mandate to work out a system whereby workers are compensated in proportion to their actual earnings, the City proposed to average additional compensation over the entire period of employment. That method of calculation would work an obvious disadvantage to the employee, since benefits, like corresponding wages, are likely to have increased immensely in the last thirty years. Therefore, the plan proposed by Plaintiffs shall be adopted. That formula calls for the additional compensation to be divided by thirty-six, thereby averaging it over a three-year period."

According to the City, the district court's order to average Long's lump sum payment over the last 36 months of his employment would result in an increase in Long's final average monthly salary

from $5,878.62 to $7,278.76, and his monthly retirement benefit would be $3,639.38, which represents 62 percent (not 50 percent) of Long's final monthly salary. The City states that the additional annual cost to the City to fund Long's retirement benefit under the district court order is $8,400.84 and notes that Long would recover the final $1,512.15 KP&F contribution within 3 months of retirement because he would receive an additional $700.07 per month under the district court's formula.

Similarly, Cooper's final average monthly salary would increase from $4,087.18 to $5,052.14. The recalculated monthly retirement benefit to Cooper of $2,526.07 would also represent 62 percent of Cooper's final monthly salary. The additional cost to the City to fund Cooper's retirement benefit under the district court's order would be $5,789.78, and Cooper would recover the final $1,042.16 KP&F contribution within 3 months of retirement because he would receive an additional $482.48 per month.

The City appealed and the Court of Appeals reversed. *International Ass'n of Firefighters v. City of Kansas City*, 24 Kan. App. 2d 98, 942 P.2d 45 (1997). The Court of Appeals noted that K.S.A. 13-14a08 provides that the City's local plan must pay a retiree monthly benefits of 50 percent of the retiree's "monthly salary at the date of retirement" but noted that "monthly salary" is not defined. 24 Kan. App. 2d at 99. The Court of Appeals addressed this court's decision in *Galindo*.

*Galindo* required this court to construe K.S.A. 13-14a08, which provides that a member who retires after 22 years or more of service and who is at least 50 years old is entitled to "monthly payments in amounts equal to fifty percent (50%) of such officer or member's monthly salary at the date of retirement." The term "salary" is not defined.

We first turn to *Galindo* because it involved pension plans under K.S.A. 13-14a08 and the contract between a city and its firefighters, and it is the case relied upon by the district court and the Court of Appeals.

In *Galindo*, the City of Coffeyville became a member of KP&F for newly employed police officers and firefighters and transferred administration of its local plan to KPERS in 1977. Subsequently,

Coffeyville's responsibility for the local plan was to withhold the amount of the employee contributions determined by KPERS from the members' salary and submit employer and employee pension contributions to KPERS. Individuals who remained in the local plan became special members of KP&F, but the members' retirement benefits were set by the provisions of K.S.A. 13-14a01 *et seq.*

For a 3-year period, Galindo elected to become a regular member of KP&F and had 7 percent withheld from his compensation. After the decision in *Singer v. City of Topeka,* 227 Kan. 356, Galindo elected to return to the local plan as a KP&F special member. His payroll contributions were reduced from 7 percent to 3 percent, and he was refunded the amount over 3 percent which had been withheld. Throughout the balance of Galindo's employment, the city withheld 3 percent of Galindo's compensation, which at the time of his retirement after 24 years as a firefighter included overtime, accumulated holiday and sick leave, compensatory time, and vacation pay as a contribution toward his retirement pension. Galindo remained a member of the Local Plan until he retired.

The *Galindo* court noted that in 1991, the KP&F plan for regular members was amended to include lump sum benefits in the KP&F benefit formula as "compensation." See K.S.A. 74-4902(9); K.S.A. 74-4952(13). In 1993, the plan for regular members was amended to define "salary" as excluding payment for accumulated sick leave or vacation leave. See L. 1993, ch. 227, § 10. The language of K.S.A. 13-14a08, which was enacted in 1945, requiring special members' pensions to be calculated on the basis of "monthly salary at the date of retirement," was not amended by the legislature. 256 Kan. at 459.

In 1992, the Coffeyville city manager met with Galindo to discuss possible revision of the pension formula for special members of KP&F. The city manager acknowledged that the city withheld 3 percent from all monetary compensation paid Galindo but did not include all other forms of compensation in its certification to KPERS of Galindo's monthly salary at the date of retirement. 256 Kan. at 459.

On September 3, 1992, the city manager sent a memo to the Coffeyville mayor and city commission acknowledging that the city manager was aware of the inequity of the local retirement plan and the city withholding 3 percent from compensation which was not included when calculating 50 percent of the member's monthly salary at the date of retirement. The memo noted that KP&F staff indicated they would accept a formula which included gross compensation and agreed that the city could average gross compensation, including accumulated sick leave, over a 3-year period to reasonably spread the extra compensation.

When Galindo retired on September 7, 1992, he was paid $15,509.69 accrued and unused compensatory time, sick time, and vacation benefits. Three percent of these payments was withheld by the city toward Galindo's pension.

Galindo suggested that the monthly average of all other forms of additional compensation he received during his last 12 months of employment be added to his base monthly salary prior to computing his pension. Using his figures, Galindo would have received a pension of $1,956.12 per month under this proposed formula. This monthly pension benefit would equal approximately 79 percent of Galindo's base monthly salary at the time of retirement. When this proposal was rejected by the city, Galindo proposed another formula which, using his figures, would have resulted in a monthly pension of $1,578.93.

The city manager disagreed with both of Galindo's proposed formulas for retirement benefits under the local plan. Nevertheless, the city, without entering into an agreement with Local No. 265, revised its pension formula for members of the local plan. The city's new formula averaged all monetary compensation Galindo received over his last 36 months of employment to arrive at his monthly salary at the date of retirement. Under this formula, Galindo's final monthly salary at the date of retirement was certified to KPERS as $2,936.80 and Galindo was receiving one-half of that amount as a pension benefit, or $1,468.40. Under the formula the city used prior to 1992, Galindo would have received $1,238.57, or $229.83 less.

Galindo sued the city for failing to pay him the appropriate pension upon his retirement as a firefighter, alleging that the city breached its contract and was taking his property without due process of law, in violation of 42 U.S.C. § 1983 (1988).

After a trial, the district court upheld the city's determination that $1,468.40 was the proper amount of monthly pension benefits. The court's memorandum opinion stated that by averaging Galindo's monthly salary over his last 3 years of employment, the City had in effect reduced his " 'monthly salary at the date of retirement' " under K.S.A. 13-14a08. 256 Kan. at 462. The court observed that the statute specifically referred to "salary" and held that benefits payable at retirement, such as overtime and accumulated vacation, sick leave, and personal days not used, were "privileges or benefit options" which employees may be entitled to under their employment contract with the city, but not salary under K.S.A. 13-14a08. Referring to the statute, the court stated:

" 'These should not be designated salary or wages. To do so would artificially increase or inflate an employee's final monthly wage or compensation and thereby artificially increase retirement benefits.

" 'To permit an employee to artificially increase his retirement benefit would discriminate. For example, an employee who was required to use sick leave during the last year of employment would receive a lower retirement benefit than that of a healthy employee who is able to accumulate sick leave.

" 'The same circumstance is created by foregoing vacation privileges. Overtime pay is also not a fixed or guaranteed compensation. The fact that one employee may have had overtime in the last month (or months) before retirement should not entitle him to higher retirement benefits over an employee who did not have overtime. These contractual privileges do not increase the fixed salary or wage paid.' " 256 Kan. at 462.

The trial court found that holiday pay which was payable whether the employee worked or not was additional wages under the statute and should be included in the pension calculation.

Concluding, the court stated:

" 'The fact that the City may have withheld three percent from these items of additional compensation for purposes of the issues raised here, does not require we consider those payments "fixed wage or salary."

" '. . . I find it was not appropriate to use a 36-month average to determine Mr. Galindo's "final monthly salary." However, using the formula I find appropriate, it appears the proper figure would be under the figure certified. I therefore

find the City did not commit an actionable breach of the contract of employment with Mr. Galindo. There is some question over what formula was appropriate, but that confusion was caused primarily by the non-specific language of the statute. The City used a formula based on past experience, other statute language, and guidance from KPERS, and the formula used was not unreasonable.' " 256 Kan. at 462-63.

The *Galindo* court stated as follows regarding the term "salary":

"The trial court construed 'salary' as used in K.S.A. 13-14a08 to mean 'a fixed or guaranteed compensation.' The City notes that in Webster's Ninth New Collegiate Dictionary (1991) 'salary' is defined as 'fixed compensation paid regularly for services,' as opposed to 'compensation,' which is defined as 'something that constitutes an equivalent or recompense.' The City asserts that 'salary,' as used in K.S.A. 13-14a08, refers to regular base salary, while 'compensation,' as used in K.S.A. 1993 Supp. 74-4952(6), includes base salary as well as other forms of pay received by KP&F regular members. The City argues that the trial court was correct in its interpretation of the statutory term 'salary.'

"The City supports its assertion by pointing out that the KP&F regular plan was amended in 1991 (see K.S.A. 74-4902[9]) to allow the inclusion of lump sum benefits in the formula used to determine 'compensation.' L. 1991, ch. 237, § 6. The KP&F regular plan was amended again in 1993 to exclude payment for accumulated sick leave or vacation leave when determining retirement benefits. See L. 1993, ch. 227, §§ 10, 34. The City points out that while 74-4902(9) and 74-4952(13) have been amended twice, the language of K.S.A. 13-14a08 has remained unchanged since its enactment in 1945. The City argues that the absence of legislation supports a presumption that the legislature did not intend that the local plans include unused vacation or sick leave as 'monthly salary at the time of retirement.'

"When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment. *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990). In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. *State v. Gonzales*, 255 Kan. 243, Syl. ¶ 3, 874 P.2d 612 (1994).

"When construing a statute, a court should give words in common usage their natural and ordinary meaning. *Bank IV Wichita v. Plein*, 250 Kan. 701, 705-06, 830 P.2d 29 (1992). Technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings. K.S.A. 1993 Supp. 77-201 *Second*; *Hudgens v. CNA/Continental Cas. Co.*, 252 Kan. 478, 483, 845 P.2d 694 (1993). 'Salary' is generally regarded as a periodical payment dependent upon time. *State v. Bland*, 91 Kan. 160, 168, 136 Pac. 947 (1913). *We conclude that the*

*term 'salary' as used in K.S.A. 13-14a08 means a periodic payment dependent upon time.*" (Emphasis added.) 256 Kan. at 464-65.

The *Galindo* court affirmed the trial court on the following contract rationale:

"Under the facts of this case, the formula that the City ultimately decided on was a unilateral modification of Galindo's pension. The question is whether the plan the City adopted was a reasonable change or modification. If the change or modification of the pension plan resulted in a disadvantage to Galindo, that disadvantage must be accompanied by offsetting or counterbalancing advantages. See *Singer*, 227 Kan. at 367.

"Had Galindo's pension been figured without any consideration of the additional compensation, he would have received approximately $230 less per month. The City could have refunded the three percent it deducted from the $15,509.69 lump sum paid at retirement, *i.e.*, $465.29, plus interest. It is clear that the City attempted to correct the inequity of its previous method of calculating pensions for members of the Local Plan. The City's new formula constitutes a reasonable change to accommodate changing conditions while maintaining the integrity of the system.

"When the contract of employment between a city and a special member of KP&F provides that the parties can amend the pension plan, K.S.A. 13-14a08 does not prohibit the parties from increasing the retirement benefits required under the statute. Based on the facts of this case, the City made a reasonable change or modification in the pension plan. Though not the modification requested by the employee, the change in the pension plan made by the City [exceeded 50% of the plaintiff's final monthly salary and] did not result in a disadvantage to the employee." 256 Kan. at 468-69.

The Court of Appeals noted that in *Galindo*, the City of Coffeyville unilaterally revised the retirement benefit formula to average the lump sum payment over the preceding 36 months to arrive at the final monthly salary.

The Court of Appeals stated:

"When Galindo sued, the trial court found the lump sum payments were not salary under K.S.A. 13-14a08, but also found Coffeyville's actions did not amount to a material breach of contract since those actions resulted in a higher retirement benefit than Galindo should have received. The Supreme Court affirmed, but on a different rationale.

"The Supreme Court construed 'salary' as used in K.S.A. 13-14a08 to mean 'a periodic payment dependent upon time.' 256 Kan. at 465. Unfortunately for us, the Supreme Court did not explain whether lump sum payments for unused sick leave, etc., fall within that definition. Rather, the court focused on whether Cof-

feyville's unilateral modification of the formula was reasonable and whether it resulted in a disadvantage to Galindo.

"The Supreme Court noted Coffeyville's new formula was an attempt to correct the inequity there involved and found the new formula to be 'a reasonable change to accommodate changing conditions while maintaining the integrity of the system.' 256 Kan. at 468.

"In summary, *Galindo* recognized that it is inherently unfair to deduct 3 percent for KP&F as a lump sum payment which is not also a part of the formula for calculating final salary for retirement benefits. On the other hand, *Galindo* did not squarely address whether K.S.A. 13-14a08 requires the inclusion of those lump sum payments in a retiree's final monthly salary.

"In the present case, the City has done nothing to remedy the *Galindo* inequity, so the trial court fashioned its own remedy. It ordered the City to include the lump sum payments in final income by averaging that sum over 36 months. Was this an appropriate remedy? To answer that question we must resolve the issue left unresolved by *Galindo*: Does the term 'salary' in K.S.A. 13-14a08 include lump sum payments for unused vacation, sick leave, and compensatory time? We answer the question in the negative.

"The *Galindo* court said only that 'salary' means a periodic payment dependent upon time. 256 Kan. at 465. 'Periodic' is defined as 'occurring at regular intervals' or 'occurring repeatedly from time to time.' Webster's Third New International Dictionary 1680 (1961). By definition, then, a lump sum payment which occurs once upon retirement cannot be a periodic payment. The trial court in *Galindo* agreed, ruling that lump sum payments should not be designated as wages because they would artificially inflate an employee's final monthly salary and, thus, discriminate. See 256 Kan. at 462.

"The trial court erred in ruling that the lump sum payments must be included in final income under K.S.A. 13-14a08. That leaves us with the question of how to best remedy the inequity of the City's deducting a 3 percent contribution from the lump sum payments. Fortunately, *Galindo* seems to provide the answer. Justice Lockett, speaking for the *Galindo* court, said: 'The City could have refunded the three percent it deducted from the . . . lump sum paid at retirement, . . . plus interest.' 256 Kan. at 468.

"We hold that is the appropriate remedy for the inequity involved in the present case." 24 Kan. App. 2d at 100-102.

The Court of Appeals affirmed the district court's order allowing permissive intervention of additional plaintiffs, subject to statute of limitations defenses, but reversed the trial court's order requiring the lump sum payments to be included in calculating final monthly salary and remanded with directions to enter a judgment requiring the City to refund to plaintiffs the 3 percent it deducted from the lump sum payments, plus interest.

IAFF and the two individual plaintiffs filed a petition for review, which this court granted on September 29, 1997. Plaintiffs assert that the additional compensation items must be included in computing final salaries for pension purposes. They state that

"approximately 100 people are being discriminated against in regard to their pensions while at the same time other 'special members' in Topeka, Hutchinson, and Coffeyville are receiving pensions based upon additional compensation and all 'regular members' are receiving pensions based upon the same additional compensation. These pensions are being paid, at least in part, by contributions made by the appellees to the pensions fund, and they are receiving no corresponding benefit."

Although this claim is correct, special members are receiving pensions that include additional compensation based upon the formula for computing benefits under their "local plan" with cities, not K.S.A. 13-14a08.

A review of the Court of Appeals' interpretation of K.S.A. 13-14a08 and the retirement contract is necessary to determine whether the court correctly determined the monthly pension due the plaintiffs. Interpretation of a statute and the construction of a contract are questions of law. *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993); *City of Arkansas City v. Anderson*, 242 Kan. 875, Syl. ¶ 1, 752 P.2d 673 (1988). Our review of question of law is unlimited. *In re Tax Appeal of Boeing Co.*, 261 Kan. 508, Syl. ¶ 1, 930 P.2d 1366 (1997).

The Court of Appeals correctly noted the *Galindo* court construed "salary" as used in K.S.A. 13-14a08 to mean "a periodic payment dependent upon time." 256 Kan. at 465. However, the *Galindo* court did not squarely decide whether lump sum payments for unused sick leave, vacation, and compensatory time should be included in a retiree's final monthly salary. The *Galindo* court instead focused on whether Coffeyville's unilateral modification of the formula which exceeded the statutory 50 percent of Galindo's final monthly salary was reasonable and whether the revised formula resulted in a disadvantage to Galindo.

As the Court of Appeals observed, the implication of the *Galindo* holding that salary means "periodic payments dependent upon time" implied that "salary" would not include lump sum distribu-

tions for unused vacation, sick leave, and compensatory time. The Court of Appeals is correct. "Periodic" is defined as "occurring at regular intervals" or "occurring repeatedly from time to time." Webster's Third New International Dictionary 1680 (1961). By definition, a lump sum payment which occurs once upon retirement cannot be a periodic payment. As we also noted in *State Bd. of Nursing v. Ruebke*, 259 Kan. 599, 612, 913 P.2d 142 (1996), even though the rule of strict construction applies to statutes, it means only that ordinary words are given their ordinary meaning and that the statute should not be read to include more or less than that readily found within it. Further, in construing statutes, statutory words are presumed to have been and should be treated as consciously chosen with an understanding of their ordinary and common meaning and with the legislature having meant what it said. *State v. Crank*, 262 Kan. 449, 451, 939 P.2d 890 (1997). Technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to those meanings. K.S.A. 77-201 *Second; Hudgens v. CNA/Continental Cas. Co.*, 252 Kan. 478, 483, 845 P.2d 694 (1993).

Here, in their petition for review, plaintiffs make essentially the same arguments they made before the Court of Appeals. Their citation to several cases from other jurisdictions are not helpful in construing our Kansas statute. In addition, none of the cited cases deals with lump sum payments for vacation, sick, and holiday time made to retirees.

K.S.A. 13-14a08 provides that a member who retires after 22 years or more of service and who is at least 50 years old is entitled to "monthly payments in amounts equal to fifty percent (50%) of such officer or member's monthly salary at the date of retirement." 256 Kan. at 464.

"Salary" is generally regarded as a periodic payment dependent upon time. *State v. Bland*, 91 Kan. 160, 168, 136 Pac. 947 (1913). We conclude that the term "salary" as used in K.S.A. 13-14a08 means a periodic payment dependent upon time.

Whether lump sum payments, accumulated holiday and sick leave, compensatory time, and vacation, pay are included in cal-

culating a member's monthly retirement is determined by the local plan, not K.S.A. 13-14a08.The Court of Appeals correctly determined that lump sum payments are not included in calculating a member's final monthly salary under K.S.A. 13-14a08. The Court of Appeals' solution of refunding members the 3 percent deducted from the lump sum paid at retirement, plus interest, is correct.

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed.