(6 P.3d 441)

No. 83,028

STATE OF KANSAS, *Appellee,* v. ROBERT L. TAYLOR, *Appellant.*

—

Opinion filed May 12, 2000.

*Kathryn B. Wall,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Christina Trocheck,* assistant county attorney, *Julie McKenna,* county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before ELLIOTT, P.J., BEIER, J., and PADDOCK, S.J.

BEIER, J.: Appellant Robert L. Taylor seeks review of the district court's refusal to allow him jail time credit for his stays in a reintegration program and a halfway house while on probation.

Taylor pleaded guilty to attempted robbery, a severity level 7 person felony, and the State agreed not to oppose probation, provided he fell within a presumptive probation category. Taylor was initially sentenced to 36 months' probation. The probation term was later changed to 24 months.

In March 1997, the State filed a motion to revoke Taylor's probation, alleging that Taylor had failed to report and used alcohol or mind-altering chemicals. At the revocation hearing, the district judge permitted Taylor to continue on probation after serving a 30-day jail sentence. Taylor was also ordered to enter an inpatient drug treatment facility and informed that his failure to comply with the treatment protocol and follow-up would be considered a violation of his probation.

Taylor was admitted to an inpatient treatment program at New Chance, Inc., (New Chance) on February 6, 1998. He was transferred to an inpatient reintegration program at New Chance on February 27, 1998, and released from the reintegration program on April 25, 1998.

In August 1998, Taylor appeared before the court and stipulated that he had again violated his probation. His probation was revoked. The district court credited Taylor with 21 days of jail time for the period Taylor served in the inpatient drug treatment program at New Chance. The district court refused to allow credit for the 57 days Taylor served in the inpatient reintegration program, stating that it did not appear to be operated under the auspices of the Department of Corrections. Taylor also received no credit for the period he had spent in a halfway house; the appellate record does not disclose the number of days Taylor spent in that setting, only that he began his halfway house time on his exit from New Chance.

Taylor's appeal requires us to interpret and apply the language of K.S.A. 21-4614a(a). The need for statutory interpretation raises a question of law, reviewable on an unlimited basis by this court. See *State v. Patterson*, 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

K.S.A. 21-4614a(a) provides in pertinent part:

"In any criminal action in which probation, assignment to a conservation camp or assignment to community corrections is revoked and the defendant is sentenced to confinement, for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates, the defendant's sentence is to be computed from a date [that] shall be established to reflect and shall be computed as an allowance for *the time which the defendant has spent in a residential facility while on probation,* assignment to a conservation camp *or* assignment to community correctional residential services program." (Emphasis added.)

In *State v. Theis*, 262 Kan. 4, Syl. ¶ 1, 936 P.2d 710 (1997), the Supreme Court held that a defendant's time spent in inpatient drug treatment imposed as a condition of probation qualified for jail time credit as time spent " 'in a residential facility while on probation,' " without regard to whether the facility was under contract to any community corrections program. In essence, Taylor asks us

to find that time in a residential reintegration program and a half-way house also so qualify. In his view, given the use of the disjunctive "or" in the statutory language, the critical issue in determining the availability of jail time credit is whether the reintegration program and halfway house constitute residential facilities, not whether they are sheltered by the umbrella of community corrections. We agree that this is the appropriate issue for the first part of the analysis.

As noted in *Theis*, the term "residential facility" is not defined in the Kansas Criminal Code. *Theis*, 262 Kan. at 9. It is merely referenced in K.S.A. 21-4610(c)(9), which permits a court to "impose any conditions of probation . . . including but not limited to requiring that the defendant . . . reside in a residential facility located in the community and participate in educational, counseling, work and other correctional or rehabilitative programs."

In the absence of a statutory or common-law definition of this phrase, this court will employ the ordinary meaning of the words used by the legislature. See *International Ass'n of Firefighters v. City of Kansas City*, 264 Kan. 17, 31, 954 P.2d 1079 (1998) ("ordinary words are given their ordinary meaning").

### The Reintegration Program

According to the record, Taylor did not change his residence when he "transferred" from the New Chance inpatient treatment program to the New Chance *inpatient* reintegration program. As a participant in the reintegration program, he was required to: obtain and maintain full-time employment; attend 6 hours of reintegration group meetings with other clients and counselors per week; and perform 4 additional hours of service each week, including attendance at outside counseling, housekeeping, Bible study, or participation in in-house support group meetings. He also participated in a 1-hour individual counseling session each week. The reintegration program unquestionably qualifies as a "residential facility" under K.S.A. 21-4614a(a).

The Supreme Court's language in *Theis* also appears to require an evaluation of whether Taylor's participation in the reintegration program was a condition of his probation. Although the statute

does not include this as a criterion for application of the "residential facility" language, it is evident to us that the Supreme Court engaged in statutory interpretation or made a policy judgment by which we are bound. Presumably, as long as time in a "residential facility" is a condition of probation ordered by the sentencing judge, there is at least some minimal assurance that the program of the facility will be consistent with the goals of the probation itself. The Supreme Court must have concluded that the legislature did not intend the term "residential facility" to be infinitely flexible. The court's requirement that time in a residential facility must have been one of the conditions of probation prevents a flophouse polluted by crack, for example, from qualifying as a "residential facility."

Here, the trial court clearly stated that Taylor was required to attend an inpatient drug treatment program as a condition of his probation. In addition, the judge emphasized: "[T]he slightest deviation and the failure to complete the treatment program, the failure to follow up on any recommendations from that treatment program will result in your serving these sentences." Again, Taylor was "transferred," but not moved physically, to the inpatient reintegration program from the inpatient drug treatment program. He was not discharged from New Chance until he completed both.

Taylor is therefore entitled to jail time credit for the 57 days he spent in the reintegration program at New Chance under K.S.A. 21-4614a(a). The inpatient reintegration program, like the inpatient drug treatment program before it, was a "residential facility," and Taylor's participation in it was a condition of his probation, as required by *Theis*. The district court's decision to the contrary is reversed; Taylor shall receive jail time credit for the 57 days.

## The Halfway House

The record before us is unclear on whether the halfway house also qualifies as a "residential facility," and we are not able to determine whether Taylor's time there was a condition of his probation. Although Taylor is correct in pointing out that this court allowed credit for a defendant's time in a halfway house in *State v. Cordill*, 24 Kan. App. 2d 780, 781, 955 P.2d 633 (1997), that

decision did not discuss the *Theis* requirement that the placement be a condition of probation, and we cannot assume the requirement is met here. The district court's decision refusing good time credit for Taylor's time in the halfway house is reversed, and that portion of this case is remanded for a determination whether the halfway house was a residential facility and whether Taylor's placement there was a condition of his probation. If the answer to each question is yes, then the district court must also determine how many days of jail time credit Taylor is due for his time at the halfway house.

Reversed and remanded for proceedings consistent with this opinion.